## YORK v. WASHBURN.

(Circuit Court, D. Minnesota, Fifth Division. November 11, 1902.)

1. VENDOR AND PURCHASER—CONTRACT WITHIN STATUTE OF FRAUDS—RECOVERY
   OF CONSIDERATION PAID.
   An oral contract for the sale of an interest in real property, though
   unenforceable, is not void, and the purchaser cannot recover a partial
   payment made thereon as earnest money if the vendor is ready, willing,
   and able to perform on his part.

At Law.  Trial to the court by stipulation.

AMIDON, District Judge.  The defendant and those associated
with him acquired a right, to a mining lease of three 40-acre tracts of
land situated in the Mesaba iron range, in the northern part of
Minnesota.  The consideration given by them for this right was the
exploration of the property, by core drills and otherwise, to discover
and define the extent of the ore deposit contained in the property.
They undertook this work at their own risk.  If no ore was found, the
expense of the exploration was their loss.  If, however, a valuable
body of ore was discovered, then the owners of the fee agreed to
execute and deliver to them, or to others named by them, a lease of
the property, conveying the right to extract ore therefrom, for the
period of 50 years, upon the payment of a royalty of 25 cents per ton
for all ores thus extracted and shipped.  Acting under this arrange-
ment, the defendant and his associates conducted extensive work upon
the property, and thereby discovered a large body of iron ore.  It was
estimated that between 3,000,000 and 4,000,000 tons of the ore thus
discovered was of a quality known as "Bessemer ore."  In addition to
this, there was a large body of ore of inferior grades.  Thereupon the
defendant, acting on behalf of himself and his associates, undertook to
sell the right to the lease thus acquired.  To that end, a brother of
the plaintiff residing in New York (one James E. York) was employed
as a broker.  He was to sell the right to the lease for $150,000, this
sum being arrived at by estimating the value of the Bessemer ore at
5 cents per ton.  Through the efforts of this broker the plaintiff be-
came interested in the property.  At first he simply undertook to
bring about a sale on behalf of the broker, his brother, to aid him
in earning his commissions.  Later, however, he applied to become
a purchaser.  The negotiations which led to what was supposed by the
parties to be a contract took place in the city of Washington, between
the defendant, the plaintiff, and the broker.  The result of the negotia-
tions was that the defendant undertook to obtain a lease directly from
the owners of the fee to the plaintiff, and the plaintiff undertook to
pay the defendant and his associates the sum of $150,000 for such
lease; and thereupon, to bind the bargain, the plaintiff mailed to the
defendant his check for $10,000, and the defendant returned to him
a receipt for the same, stating, in general, the purpose for which the
payment was made, but not sufficiently identifying the property to
make the receipt a memorandum, within the meaning of the statute of
frauds.  It will be noted that throughout all these negotiations no
lease had in fact been prepared or executed.  The plaintiff did not

have before him the instrument defining his rights and obligations, but the whole transaction rested entirely in parol. It was contemplated by the parties that some little time would have to intervene before the lease could be prepared, as there were certain minor heirs, who had a sixth interest in the property, and proceedings in the probate court were necessary to obtain authority to execute the lease on their behalf. After Mr. Washburn returned to Duluth, the place of his residence, he prepared a form of lease, and sent it to the plaintiff, in Ohio. This form provided for the payment of a royalty of 25 cents per ton upon all ores mined and shipped from the property. After some delay the plaintiff expressed his dissatisfaction with this feature of the lease, and declined to execute it on his part, claiming that it was his understanding that the royalty was to be paid only on Bessemer ore. After considerable correspondence, in which each of the parties insisted upon his understanding of the agreement, the plaintiff repudiated the entire transaction, refused to execute any lease, and demanded a return of the $10,000. The defendant, on the other hand, offered to deliver a lease of the property, in accordance with his understanding of the oral agreement, and was ready and able to do so, and refused to return the earnest money.

This suit is brought to recover the $10,000 and interest. It is an action at law, but was tried to the court without a jury, pursuant to stipulation of the parties. On behalf of the plaintiff the action is presented in two aspects: In the complaint he charges that the contract was for the execution of a lease providing for the payment of a royalty of 25 cents per ton on Bessemer ore only, that the defendant failed and refused to deliver such a lease, and that thereby the consideration for the payment of the $10,000 had wholly failed. In his reply to defendant's answer, the plaintiff, while insisting upon his original position, also puts forward the claim that all the negotiations between the parties were oral, and the contract was therefore void under the statute of frauds of Minnesota.

The plaintiff came to the trial of this cause relying mainly upon this second contention, namely, that he was entitled to recover the $10,000 because the contract between himself and the defendant was void under the statute of frauds. This was the burden of counsel's argument at the hearing. It is entirely plain, however, under the authorities, that the position thus taken is untenable. An oral contract for the sale of an interest in real property, though unenforceable, is not void. One who makes a partial payment of the consideration upon such a contract cannot recover it if the vendor is ready, willing, and able to perform on his part. No court has more firmly and clearly asserted this doctrine than the supreme court of Minnesota. Sennett v. Shehan, 27 Minn. 328, 7 N. W. 266; McKinney v. Harvie, 38 Minn. 18, 35 N. W. 668, 8 Am. St. Rep. 640. See, also, Mitchell v. McNab, 1 Ill. App. 297; Collier v. Coates, 17 Barb. 471. The whole subject is stated in a scholarly way by Prof. Keener in his work on Quasi Contracts (page 232 et seq.). The rule, at first thought, seems harsh, but consideration justifies its wisdom. The money is paid, to use the wise language of trade, "to bind the bargain,"—a bargain recognized as without binding force in itself, by reason of the statute of frauds. To

permit its recovery upon the mere plea of the statute would defeat the primary object of the parties. But the situation of the defendant is the best justification of the rule. His only remedy for the damages that he suffers by the plaintiff's repudiation of the oral agreement is to hold the earnest money. The statute forbids any recovery on the contract. To compel a restitution of the payment is to take from the defendant the very redress which he has wisely exacted, and which the plaintiff has voluntarily placed in his hands. It might be that equity would grant relief against such a forfeiture in a case of great hardship, but the law affords no redress.

The plaintiff is therefore left with only a single ground of recovery, namely, that the defendant in fact agreed in the oral negotiations to obtain and deliver to him a lease of the property providing a royalty of 25 cents per ton upon Bessemer ore only. If this was the actual agreement, the defendant is in default, and the plaintiff is entitled to recover. Upon this issue the plaintiff has the burden of proof. He is bound to show by a preponderance of the evidence that the agreement was in fact as he contends. This he has wholly failed to do. The only direct evidence in support of his contention is his own testimony, and that is exceedingly vague. It is as follows:

"I met Mr. Washburn in the city of Washington on the 28th of November, 1901. James E. York was present with me. He was there at my request. The talk about this property was that I should pay $150,000 for it, and a royalty of 25 cents a ton on the Bessemer ore,—I understood it to be."

This qualified and vague statement is the only evidence which the plaintiff himself gives upon the subject. His brother, James E. York, on the contrary, testifies positively that the agreement was for a royalty of 25 cents a ton upon all ore mined and shipped from the property. He certainly cannot be regarded as an unfriendly witness to the plaintiff. The defendant also testifies with positiveness and particularity that the agreement between himself and the plaintiff plainly provided for a royalty of 25 cents a ton on all the ore mined and shipped. There is, however, other evidence in support of the defendant's contention that is still more cogent. The negotiations in Washington were held on the 28th day of November, 1901, being Thursday. On the preceding Saturday, November 23d, the plaintiff had a meeting with Mr. A. W. Thompson, president of the Republic Iron & Steel Company of Chicago, in which he undertook, on behalf of his brother, James E. York, to negotiate a sale of the lease to that corporation. At that meeting the whole character of the property, and of the ore therein, and of the royalty payable to the fee owners, was carefully discussed between the plaintiff and Mr. Thompson, who was himself familiar with the facts. Mr. Thompson has given his deposition in this case. I quote from it as follows:

"Q. I ask you whether or not, in the course of the conversation between you, the question of the quality and grade of the iron ore on the property came up? A. Oh, yes; that was discussed very fully. We had before us the chemical returns,—quite a large number of samples taken from the property. These returns showed the metallic iron and phosphorus in the different samples, and showed what proportion of the ore deposit was Bessemer, and what proportion non-Bessemer. Q. You did not purchase the lease for your company? A. No; I did not. Q. Did you state to Mr. York any reason why you

did not purchase it? A. I did. Q. What did you state to him? A. I told him the price he was asking for the lease was too high, in view of the fact that the royalties were 25 cents per ton, and that such a large proportion of the ore was of the poorer or non-Bessemer, variety, and 25 cents was a high royalty for non-Bessemer ore. Q. Did he, or did he not, say that there was not or would not be any royalties under the lease to be paid to the lessors on the non-Bessemer ore? A. No; he did not; and I told him my main objection was the high royalties on non-Bessemer ore, and also told him in that connection that the Republic Iron & Steel Company had just concluded a purchase of a lease on a large non-Bessemer property of two forty-acre tracts on the Mesaba range, which carried 18 cents royalty per ton, and a small minimum annual output besides."

This deposition leaves no doubt that only a few days previous to the transaction between the plaintiff and the defendant the whole subject of the royalties had been carefully considered by the plaintiff; that it was then understood that the royalty of 25 cents was to be paid under the lease upon non-Bessemer as well as Bessemer ore; and the plaintiff failed to negotiate a sale of the property for that very reason. It does not seem credible that, if the plaintiff had the understanding that the royalty applied only to Bessemer ore, he would not have presented that consideration to Mr. Thompson. Great force is added to Mr. Thompson's testimony by the fact that it is wholly uncontradicted. His deposition was taken on the 6th day of October, 1902. It was filed with the clerk of this court on the 7th day of October of the same year. The plaintiff's deposition was taken on the 24th day of October, 1902,—about two weeks after the deposition of Mr. Thompson had been taken and filed. It is not to be doubted that the testimony of Mr. Thompson was brought clearly to the attention of the plaintiff and his counsel. In fact, in his rebuttal evidence the mind of the plaintiff was expressly directed to the conversation between himself and Mr. Thompson, and yet he in no respect either denies or qualifies the testimony of Mr. Thompson on the subjects above referred to.

I am therefore satisfied that the preponderance of the evidence clearly shows, and I so find the fact to be, that the agreement and understanding between the plaintiff and the defendant was that the lease should provide for the payment of a royalty of 25 cents per ton on all ores mined and shipped from the property; that the defendant was ready, willing, and able to obtain and deliver to the plaintiff a lease in conformity with such agreement; and that the plaintiff, without any just cause, failed and refused to accept such lease and carry out the agreement. This finding is fatal to the plaintiff's right of recovery. It also defeats any right of recovery on the part of the defendant under the various counterclaims set up in the answer.

Judgment will therefore be entered dismissing the complaint upon the merits, with costs; also dismissing the counterclaims. It is so ordered.